UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARILYN A. NESTICO,

      Plaintiff,

v.                                  Case No. 04-73157

UNITED AUTO WORKERS, REGION 1,      Honorable Patrick J. Duggan
a Michigan corporation, BANKERS LIFE
AND CASUALTY COMPANY, an Illinois
corporation, and FORD MOTOR
COMPANY, a Delaware corporation,

      Defendants.
_____/

**OPINION AND ORDER
GRANTING DEFENDANT BANKERS LIFE'S MOTION FOR SUMMARY
JUDGMENT, GRANTING DEFENDANT FORD'S MOTION TO DISMISS OR IN
THE ALTERNATIVE FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT UAW'S MOTION TO DISMISS OR FOR JUDGMENT**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on JUNE 22, 2005.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

On March 7, 2005, Plaintiff Marilyn A. Nestico filed her First Amended Complaint,

alleging: (I) breach of third-party beneficiary contract against Bankers Life and Casualty

Company ("Bankers Life"); (II) equitable estoppel against Bankers Life; (III) breach of

fiduciary duties against Ford Motor Company ("Ford"); (IV) promissory estoppel against

Ford; and (V) breach of fiduciary duties against the United Auto Workers ("UAW"). Presently before the Court are Defendant Ford's Motion to Dismiss or in the Alternative for Summary Judgment, Defendant UAW's Motion to Dismiss or for Judgment, and Defendant Bankers Life's Motion for Summary Judgment.[1]  A hearing was held on May 19, 2005.

## I.   Background

A. The Insurance Policies

Nicholas Nestico, Plaintiff's deceased spouse, was an hourly employee of Ford from March 11, 1947 until his retirement on January 1, 1990.  As a Ford employee, Nicholas was represented in his employment by the UAW.

Ford automatically provides a basic life insurance benefit to its employees, which is administered by Unicare.  (*See* Br. in Supp. of Def. UAW's Mot., Ex. 2; *see also* Ex. 1, Wainaina Aff. at ¶ 3; Ex. 7, Berneth Aff. at ¶¶ 2-3; Ex. 8, Finnessy Aff. at ¶ 8).  When Ford employees have questions about their benefits, they are referred to Ford's National Employee Service Center ("NESC").  As pertinent to this case, the NESC answers questions from beneficiaries relating to an employee's insurance policies and updates information regarding the insurance benefits of active employees only.[2]  Once an employee retires, however, the NESC usually refers the retirees to Unicare.  (*See* Ex. 1, Wainaina Aff. at ¶ 5; Ex. 8, Finnessy

---

[1] On November 18, 2004, Bankers Life filed a "Motion for Judgment on the Pleadings" and a "Memorandum in Support of Motion for Summary Disposition."  Because both the Motion and Memorandum ask the Court to enter summary judgment pursuant to FED. R. CIV. P. 56, the Court will treat Defendant Bankers Life's Motion as a motion for summary judgment, rather than a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c).

[2] The NESC is a centralized Human Resources center that provides a number of services to Ford's employees.

2

Aff. at ¶ 7).

Ford also provides its UAW retirees with the option to purchase additional insurance, including group life insurance, dependent life insurance, and accidental death insurance. The retiree pays the premiums for any such optional insurance. Ford's third-party administrator for the optional insurance program has been Bankers Life. Premiums are paid by the retiree to Bankers Life. (*See* Br. in Supp. of Def. UAW's Mot., Ex. 2; *see also* Ex. 1, Wainaina Aff. at ¶ 4; Ex. 8, Finnessy Aff. at ¶ 9).

Moreover, the "Your Retiree Benefits" booklet (Exhibit 2) instructs the retiree to make any inquiries regarding his or her basic life insurance benefit to Unicare and any inquiries regarding his or her optional insurance to Bankers Life. (Br. in Supp. of Def. UAW's Mot., Ex. 2).

On May 17, 1994, over four years after he retired, Nicholas purchased a $100,000 optional accidental death insurance policy from Bankers Life. He named Plaintiff as the beneficiary. At the time of his purchase, Bankers Life provided Nicholas with an "Hourly Optional Accidental Insurance Plan" booklet. This booklet contained information regarding the administration of his optional insurance, as well as how and when the premiums were to be paid. (Br. in Supp. of Ford's Mot., Ex. C). In addition, the "Plan Options" section of the booklet listed the telephone number and address that an individual on behalf of the insured or the beneficiary would need for the purpose of making a claim. (*Id.* at 13). The booklet further instructs: "**NOTICE OF CLAIM:** Written notice of claim must be given to the Company within 31 days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonable [sic] possible." (*Id.*)

B. Plaintiff's Communications with Ford's NESC

Nicholas [hereinafter "decedent"] died on August 15, 2002. On August 23, 2002, Plaintiff called the NESC and informed it of her husband's death.[3] Carol Thimm, an NESC representative, assisted Plaintiff. Thimm answered Plaintiff's questions regarding the basic life insurance policy. Thimm provided Plaintiff with Unicare's telephone number.

On September 6, 2002, Plaintiff called the NESC twice. Beverly Considene, an NESC representative, assisted Plaintiff. During their first conversation, Considene asked Plaintiff if decedent had purchased optional life insurance, to which Plaintiff replied, "No. I didn't even know about it." (Br. in Supp. of UAW's Mot. Ex. E, Finnessy Aff. accompanying Ex. C). At no time during their first or second conversation did Plaintiff indicate that decedent had purchased optional life insurance.

On October 14, 2002, Unicare paid Plaintiff, the named beneficiary, the proceeds of decedent's basic life insurance policy.

On June 27, 2003, Plaintiff called the NESC twice. However, unlike the prior conversations, there are no transcripts or notes from these conversations.[4]

Plaintiff contends that during all of these conversations, she was unaware of the

---

[3] The NESC generally tapes all incoming telephone calls and saves the recordings. The NESC also maintains notes from the telephone conversation in a program called, SCOPUS, which provides a brief overview of the conversation. (Br. in Supp. of Def. UAW's Mot., Ex. 8, Finnessy Aff. at ¶ 11).

[4] Defendant Ford contends that in both calls, Plaintiff, who was also a Ford employee, requested information regarding her 401(k) and Optional Investment Plan. According to Defendant "Plaintiff did not inquire about an optional insurance policy during these calls, nor did the NESC representative deny the existence of one." (Br. in Supp. of Def. Ford's Mot. at 6-7).

optional insurance policy because decedent had handled all of their financial affairs. (Am. Compl. at ¶ 13).

    C. <u>Plaintiff's Discovery of the Optional Insurance Policy</u>

According to Plaintiff, in November 2002, Plaintiff's former counsel, Mark James, Esq., made a follow-up phone call to Ford and UAW to inquire about the existence of any additional policies for purposes of probate administration. He was informed that no such policies existed. (Am. Compl. at ¶ 24).

In late 2003, decedent's children, who are unrelated to Plaintiff, contacted James and indicated that they believed decedent had purchased an additional insurance policy. (*Id.* at ¶ 25). James contacted Ford and the UAW for a second time but was informed that no outstanding policies existed. (*Id.* at ¶ 26).

On December 14, 2003, Plaintiff received a letter from "Optional Insurance Plan," indicating that the administrator had received Plaintiff's request to file a claim on the decedent. (*Id.* at ¶ 27). When Plaintiff called the number included in the letter, she contends that she was denied any information regarding the nature or purpose of the letter. (*Id.* at ¶ 28). Instead, she was informed that she would receive a claim form. (*Id.*)

In a letter dated December 15, 2003, sent to the attention of decedent from "Ford Hourly Optional Insurance Plan," Plaintiff was informed that the administrator had received a request to file a claim and enclosed a claim form with instructions to attach any doctor's and/or accident reports and in the case of an accident, a certified copy of the death certificate. (*Id.* at ¶ 29).

On January 22, 2004, Plaintiff made a claim on the Bankers Life optional accidental

death policy that was denied as untimely.  (*Id.* at ¶¶ 31-32).  The letter stated that the claim was untimely because it was not received within 30 days of the accident, stating, "I am sorry, but the policy will not permit us to consider payment of benefits."  (*Id.* at 33).

D. Procedural Background

On July 9, 2004, Plaintiff filed a complaint in the Circuit Court for the County of Wayne against Defendants.  On August 18, 2004, Defendant Bankers Life removed the action to this Court.

Defendant Bankers Life filed its Motion for Judgment on the Pleadings on November 18, 2004.  Defendant Ford filed its Motion to Dismiss or in the Alternative for Summary Judgment on December 1, 2004.  In its Motion, Ford contends that Plaintiff is unable to establish a claim of misrepresentation against Ford because: (1) Ford had no duty to inform Plaintiff of the optional insurance policy, and (2) Ford did not deny the existence of an optional insurance policy.  Ford, in its Motion, also seeks sanctions against Plaintiff.

On December 22, 2004, Defendant UAW filed its Motion to Dismiss or for Judgment. In its Motion, UAW contends that Plaintiff's claims against UAW should be dismissed because: (1) Plaintiff made no inquiries with UAW, (2) even if she had made inquiries, UAW had no duty to track and maintain retiree insurance information, and (3) even if she made inquiries and there was a duty to track and maintain retiree information, UAW discharged its obligations by distributing the "Your Retiree Benefits" booklet.

On March 7, 2005, Plaintiff filed her First Amended Complaint alleging: (I) breach of third-party beneficiary contract against Bankers Life; (II) equitable estoppel against Bankers Life; (III) breach of fiduciary duties against Ford; (IV) promissory estoppel against Ford; and

(V) breach of fiduciary duties against the UAW.  On April 18, 2005, Defendant UAW filed an Amended Motion to Dismiss or for Judgment and on April 19, 2005, Defendant Ford filed a Supplemental Brief, both addressing the additional claims Plaintiff set out in her First Amended Complaint.

## II.   Standards of Review

In deciding whether to grant a Rule 12(b)(6) motion, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). "A judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Id.*

A 12(b)(6) motion to dismiss may be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if evidence outside of the pleadings is presented and considered by the court.  FED. R. CIV. P. 12(b).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  The

moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

## III.   Applicable Law and Analysis

The parties agree that the policy is governed by the Employee Retirement Income Security Act of 1974 (ERISA). "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S. Ct. 2890, 2896 (1983).

### A. Count I: Breach of Third Party Beneficiary Contract Against Bankers Life

Plaintiff contends that the Court should apply a *de novo* standard when reviewing the denial of benefits, while Defendant Bankers Life contends that the arbitrary and capricious standard of review applies. The standard of review in a denial of ERISA benefits depends on the language of the plan itself. A denial of ERISA benefits is to be reviewed *de novo*

8

unless the benefit plan gives the administrator "discretionary authority to determine eligibility for benefits or construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989).  If the plan vests discretionary authority in the administrator, the denial may be reversed only upon a showing that the decision was "arbitrary and capricious." *Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004). "[The Sixth Circuit] has read *Firestone v. Bruch* to hold that discretion is the exception, not the rule and that the arbitrary and capricious standard does not apply unless there is a *clear* grant of discretion to determine benefits or interpret the plan." *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994) (emphasis in original). Discretionary authority does not require the use of the word "discretion" or any other "magic word." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998).  Instead, a court should focus on the breadth of the administrator's powers, looking at its authority to determine eligibility for benefits or construe the terms of the plan.  *See id.*

Here, Bankers Life contends that the arbitrary and capricious standard should apply because the following plan provision gives it discretion to determine if there was a timely proof of claim:

> Written notice of injury upon which the claim may be based must be given to the Company within thirty days of the date of commencement of the first loss for which benefits arising out of each such injury may be claimed.
>
> * * *
>
> If it wasn't reasonably possible for the Insured to give Us proof in the time required We won't reduce or deny the claim for this reason if the proof is filed as soon as possible.  In any event, the proof required must be given no later than one (1) year from the time specified unless the Insured was legally unable to act.

(Br. in Supp. of Def. Bankers Life's Mot. Ex. B).

The Sixth Circuit has held that language in a plan requiring "satisfactory" proof of claim constitutes a level of discretionary authority sufficient to trigger the arbitrary and capricious standard of review for a denial of benefits claim. *See Perez*, 150 F.3d at 557-58; *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996). However, here, the language does not give the administrator discretion to determine who receives benefits under the plan; rather, the plan provision merely provides that the administrator may not deny benefits where it "wasn't *reasonably* possible" for the claimant to produce proof of loss. In this Court's opinion, the administrator's determination of what is reasonably possible is not a clear grant of discretion. Therefore, the Court will review the denial of benefits *de novo*.

Here, decedent died on August 15, 2002 but Plaintiff did not provide Bankers Life with a notice of claim for death benefits until January 22, 2004, more than two years later. Plaintiff argues that she brought her claim "as soon as possible." However, the plan provides: "In any event, the proof required must be given no later than one (1) year from the time specified unless the Insured was legally unable to act." Therefore, Bankers Life did not breach its contract with Plaintiff when it denied her benefits under the plan.

Plaintiff, relying on *Clarke v. NBD Bank*, 3 Fed. Appx. 500, 2001 WL 180971(6th Cir. Feb. 15, 2001), contends that the time limitation for filing should be tolled. In this Court's opinion, *Clarke* is not persuasive. While the Court in *Clarke* did, in fact, identify five factors to be considered by the Court where equitable tolling is applicable, the Court did so based on the facts of that case. In *Clarke*, the plaintiff contended that she had filed a claim for disability benefits in 1992 (within the 3-year limitation for filing a claim for benefits) but that

defendants never notified her that this claim had been denied. *Id.* at *1. She filed a second claim for benefits in July 1995, which was denied as untimely in October 1995. *Id.* The language of the policy provided that any lawsuit must be brought within 3 years. *Id.* at *2. The plaintiff claimed that she was unaware of the 3-year limitation for filing suit until she received a copy of the plan in October 1995. *Id.* at *1. She brought an action under ERISA in June 1998, which was almost 6 years after her disability. *See id.* at *2.

In this Court's opinion, the Sixth Circuit discussed the concept of equitable tolling because the plaintiff had claimed that the conduct of defendants caused or contributed to her late filing. The Court concluded: "The circumstances here do not warrant application of equitable tolling . . . ," concluding that plaintiff had access to "pertinent information" and "did not follow-up" on her first claim for years. *Id.* at *4. "Furthermore, she waited almost two years and nine months after learning of the deadline to file suit." *Id.*

As set out above, the plan at issue in this case is governed by ERISA. "A primary purpose of ERISA is to insure the integrity and privacy of the written plans . . . thus the plain language of an ERISA plan should be given its literal and natural meaning. *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997) (citing *Burnham v. Guardian Life Ins. Co.*, 873 F.2d 486, 489 (1st Cir. 1989)). In this Court's opinion, the concept of equitable tolling would only apply in an ERISA case if there is evidence that the conduct of the defendant caused or contributed to the failure to timely file.[5] In this case, there is no

---

[5] In *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988), an employment discrimination case, and the case upon which the Sixth Circuit in *Clarke* relied, when it listed the factors to be considered in deciding whether or not to apply equitable tolling, the Sixth Circuit stated: "The most common situation calling for equitable tolling involves some affirmative representation or

evidence that Bankers Life did anything to cause or contribute to Plaintiff's failure to file the claim within the time limit set forth in the policy.

Moreover, Plaintiff has argued that because Bankers Life has not presented any evidence or argument that they are prejudiced by this delay, the time for filing as set forth in the policy should be tolled and the Court should conclude that the claim was timely filed. However, lack of prejudice alone is not sufficient to warrant equitable tolling. *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988).

B. Count II: Equitable Estoppel Against Bankers Life

The ERISA preemption clause, section 544(a) of ERISA, 29 U.S.C. § 1144(a), "preempts state law and state law claims that 'relate to' any employee benefit plan." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275 (6th Cir. 1991). This preemption clause is to be construed broadly. *Id.* at 1276. In fact, the Sixth Circuit has "repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by

ERISA." *Id.*

The Sixth Circuit has held that equitable estoppel may sometimes apply to ERISA cases. *See, e.g., Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1300 (6th Cir. 1991) (holding that where there was an employee welfare benefit plan and where the actuarial soundness of the fund was not implicated, equitable estoppel may apply). However, the Sixth Circuit has

---

action by the employer that causes an employee to miss a filing deadline." *Andrews*, 851 F.2d at 151.

limited the availability of an equitable estoppel claim in the context of ERISA cases to those circumstances in which the plan documents were ambiguous.  *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998).  Here, because the Court believes that the terms of the plan documents are unambiguous, the Court will not apply equitable estoppel.

In addition, even if the Court were to consider Plaintiff's claim of equitable estoppel, the claim would fail.  To invoke equitable estoppel, the plaintiff must show:

1) conduct or language amounting to a representation of material fact;

2) awareness of the true facts by the party to be estopped;

3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe the former's conduct is so intended;

4) unawareness of the true facts by the party asserting the estoppel; and

5) detrimental and justifiable reliance by the party asserting the estoppel on the representation.

*Tregoningo v. Am. Comty. Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir. 1993).

Here, Plaintiff cannot establish the elements of estoppel because there was no representation by Defendant Bankers Life regarding decedent's optional insurance policy. Therefore, Count II of Plaintiff's First Amended Complaint must be dismissed.

C.  Breach of Fiduciary Duties Against Ford

Defendant Ford contends that Plaintiff is unable to establish a claim of breach of fiduciary duty under ERISA. Section 404(a)(1) establishes that a trustee administering a plan that ERISA governs has fiduciary responsibilities:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

13

(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
(D) in accordance with the documents and instruments governing the plan.

29 U.S.C. § 1104 (a)(1).

"[A] fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements were made negligently or intentionally." *Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 844 (6th Cir. 2003).

Here, Ford concedes that it is a fiduciary to the plan. (Def. Ford's Supplemental Br. in Supp. of Mot. at 1 n.1). However, Ford contends that Plaintiff has presented no evidence that Ford negligently or intentionally misled Plaintiff. Defendant Ford has attached transcripts of the telephone conversations between Plaintiff and the NESC representatives to its Motion. (Def. Ford's Br. in Supp. of Mot. Ex. E, Telephone Trs.). Ford contends that it was Plaintiff who denied that decedent had purchased any optional life insurance:

Bev:      . . . The company provided life insurance and also optional life. Now, the difference . . .

Marilyn:  Let's go back. The one that they're going to pay me, that's the basic life insurance, right?

Bev:      Right. However, if your husband was also paying or yourself, and you would know, because there would be a payroll deduction on your pension stub.

Marilyn:  No.

14

> Bev:      Okay.  Cause, you can, you know, at the time of retirement, purchase additional coverage for your spouse or for yourself.
>
> Marilyn: No.
>
> Bev.:     Okay.  You did not have that?
>
> Marilyn: No.  I didn't even know about it.
>
> Bev:      Okay, Okay.  Okay, then you do have . . .  You don't have to worry about it. . . .

(*Id.*, Sept. 6, 2002 Telephone Tr.).

Although Ford never denied the existence of an optional policy during its phone conversations with Plaintiff,  Ford did deny the existence of an optional policy when Plaintiff's counsel called to inquire about the existence of an optional policy.  Plaintiff's counsel contends:

> I personally made several phone calls, on two separate occasions in 2002 and 2003, to Defendants Ford and the UAW to inquire about the existence of any outstanding or otherwise undiscovered insurance policies which named Marilyn A. Nestico, or anyone else, as a beneficiary of her deceased husband Nicholas C. Nestico. . . .
>
> In response to my requests for the information . . . , I was informed by employees of Defendant, Ford Motor Company and Defendant, UAW, that no such policies existed.

(Pl.'s Reply Ex. 4, James, Esq. Aff. at ¶¶ 3-4).  Therefore, at issue is whether Ford breached any of its fiduciary duties when it told Plaintiff's counsel that no additional insurance policies existed.

"ERISA imposes trust-like fiduciary responsibilities . . . and a trustee is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for

his protection in dealing with a third person." *Gregg v. Transp. Workers of Am. Int'l*, 343

F.3d 833, 847 (6th Cir. 2003) (internal citations omitted).  For example, in *Krohn v. Huron*

*Mem. Hosp.*, 173 F.3d 542 (6th Cir. 1999), an employee alleged that her employer breached

its fiduciary duty under ERISA by failing to provide her with information about long-term

disability benefits. *Id.* at 545.  The employer never notified the plaintiff about available long-

term disability benefits despite her husband's general requests for information.  *Id.* at 548.

The Sixth Circuit held that "once an ERISA beneficiary has requested information from an

ERISA fiduciary *who is aware of the beneficiary's status and situation*, the fiduciary has an

obligation to convey complete and accurate information material to the beneficiary's

circumstance, even if that requires conveying information about which the beneficiary did

not specifically inquire."  *Id.* at 547 (emphasis added).

       In contrast, in this case, Defendant Ford had no way of knowing that Plaintiff was a

beneficiary or that the decedent had purchased an optional insurance policy.  Decedent had

been retired four years before he purchased the policy from Bankers Life.  Plaintiff has not

pointed to and research has not revealed any case law which establishes a duty, absent an

express duty set out in the policy, on the part of a former employer to update or maintain

information regarding a retired employee's optional benefits administered by a third party.

As Ford Human Resources Associate Robert Finnessy explained, "once an hourly employee

retires from the Company, the employee's Basic Life Insurance and optional insurance are

handled by a third party administrator for Ford." (*Id.*, Finnessy Aff. at ¶ 7).  In addition, the

UAW-Ford "Your Employee Benefits" booklet provides:

       [Optional Insurance] Premiums are payable in advance through payroll deduction

16

for each month of coverage.

> ***If you cease active employment, payroll deductions will be discontinued and you must make your premium contributions directly to the carrier*** to continue coverage.  If you do not make premium contributions, your coverage will terminate. . . .

(*Id.*, "Your Employee Benefits" booklet at 77 (emphasis added)).

Thus, although Ford could have provided Plaintiff general information about "optional insurance policies" and sent her an employee benefits booklet, Ford had no way of knowing whether the decedent had purchased optional insurance.

Moreover, Plaintiff is unable to prove that she is entitled to $100 per day under section 502(c), 29 U.S.C. § 1132, which provides, in pertinent part:

> Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).

As alleged, Plaintiff's attorney made two phone calls in 2002 and 2003 "to inquire about the existence of any outstanding or otherwise undiscovered insurance policies" but was told that no such policies existed.  (Pl.'s Reply Ex. 4, James, Esq. Aff. at ¶¶ 3-4).

Section 502(c), 29 U.S.C. § 1132(c)(1)(B) provides a remedy for a failure to provide information, but does not, of its own force, give rise to a duty to provide any particular information.  A remedy under this section is appropriate only where other ERISA provisions create an affirmative duty to disclose information.  An administrator is required to provide

the information listed in sections 104(b)(4) and 503.  Section 503, 29 U.S.C. § 1133, requires an administrator to provide a participant or beneficiary with a written denial and a full and fair opportunity for review.  Such information was provided by Bankers Life and Plaintiff has not alleged that Defendant Ford failed to comply with this provision.  At issue is whether Defendant Ford complied with section 104(b)(4).

ERISA section 104(b)(4) provides:

The administrator shall, ***upon written request*** of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4) (emphasis added).

Here, Plaintiff's counsel made his request by telephone; no written request for plan information was ever made.  Therefore, Plaintiff is not entitled to penalties pursuant to 29 U.S.C. § 1132(c)(1)(B).

Construing the claim in the light most favorable to Plaintiff, accepting all Plaintiff's allegations as true, as this Court must in a 12(b)(6) motion, the Court cannot dismiss Plaintiff's breach of fiduciary duties claim against Defendant Ford for failure to state a claim upon which relief may be granted.  Defendant Ford, however, has also filed a motion for summary judgment seeking judgment on Plaintiff's Complaint.  Because the record does not reveal that Ford breached its fiduciary duties to Plaintiff, Count III of Plaintiff's First Amended Complaint must be dismissed.

### D. Count IV: Promissory Estoppel Against Ford

 Defendant contends that Plaintiff's promissory estoppel claim is preempted by ERISA.

18

In the context of ERISA, the Sixth Circuit has noted that promissory estoppel claims are to be treated the same as equitable estoppel claims. *Sprague*, 133 F.3d at 403 n.13 ("Although we have never explicitly held that promissory estoppel claims are cognizable under ERISA, we see no reason to treat the two forms of estoppel differently."). As explained above, because the Court believes that the terms of the plan documents are unambiguous, promissory estoppel does not apply.

Alternatively, the Court believes that Plaintiff's promissory estoppel claim should be dismissed because Plaintiff has not demonstrated that Ford made any promise to Plaintiff. To establish a claim under promissory estoppel, the plaintiff must show: "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 686-87, 599 N.W.2d 546, 552 (1999).

Construing the claim in the light most favorable to Plaintiff, accepting all Plaintiff's allegations as true, as this Court must in a 12(b)(6) motion, Plaintiff has stated a claim for promissory estoppel. In her First Amended Complaint, Plaintiff alleges: "Ford promised that it would assist the Plaintiff with her efforts to administer her survivor benefits and, further, provide her with the necessary forms to effectuate any benefits, which inured as a result of her husband's death." (Pl.'s First Am. Compl. at ¶ 17).

Defendant Ford, however, has also filed a motion for summary judgment seeking judgment on Plaintiff's Complaint. The evidence in the record, including the telephone

19

transcripts and the benefits booklet, does not support Plaintiff's allegation. The booklet provides that retirees must make their optional insurance payments directly to the carriers. ("Your Employee Benefits" booklet at 77). In addition, Plaintiff, in her Response, fails to point to any statement made by any NESC representative or other Ford employee promising to help Plaintiff find all insurance benefits due to her. Therefore, Count IV of Plaintiff's First Amended Complaint must be dismissed.[6]

E. Count V: Breach of Fiduciary Duties Against the UAW

Defendant UAW contends that its Motion should be granted for the following reasons: (1) Plaintiff made no inquiries with UAW, (2) even if she had made inquiries, UAW had no duty to track and maintain retiree insurance information, and (3) even if she made inquiries and there was a duty to track and maintain retiree information, UAW discharged its obligations by distributing the "Your Retiree Benefits" booklet.

International unions are distinct from their local affiliates. *See, e.g.*, *Shimman v. Frank*,

---

[6] In its Motion, Defendant Ford seeks sanctions against Plaintiff pursuant to MICH. COMP. LAWS ANN. § 600.2591 contending that Plaintiff's action was frivolous. However, Ford brings its request for sanctions under the wrong statute. Rule 11(c) of the Federal Rules of Civil Procedure governs motions for sanctions in the federal courts. Subdivision (c)(1)(A) provides, in pertinent part:

> A motion for sanction sunder this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . ., the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. . . .

FED. R. CIV. P. 11(c)(1)(A).

Here, Defendant Ford did not make its motion for sanctions separately and did not comply with the "safe harbor" provisions of Rule 11. Therefore, this Court declines to address the merits of its sanctions argument. Defendant Ford's request for sanctions shall be denied.

625 F.2d 80, 97 (6th Cir. 1980) ("The International Union is a separate body from the local. The acts of the local and its agents cannot automatically be imputed to the International."). Here, Defendant UAW International Union is legally distinct from its locals and is not liable for any local's alleged failure to inform.  *See Hines v. Local No. 377, Chauffeurs, Teamsters, Warehousemen & Helpers*, 506 F.2d 1153, 1157 (6th Cir. 1974) (affirming the dismissal of the international union absent evidence it was acting at the direction of the local union).

Plaintiff contends that she was misled by the following:

Ford/UAW Pension at 1-800-829-8833 and spoke with a Ms. Carrell Thimm;
Hourly Service Center at 1-800-426-4610
Unicare Life and Health Insurance Company at 1-800-843-8184
National Employee Service Center (NESC) at 1-800-248-4444
UAW Local 600
Sue Tucker with UAW Retirement (Ford pension) at 1-800-829-8833;
Melissa with Optional Insurance Plan at 1-800-742-8215.

(Br. in Supp. of Def. UAW's Am. Mot. Ex. 4, Pl's Answer to Interrogatory 8).

In this case, Plaintiff has failed to present any evidence that she made any inquiries with Defendant UAW International Union and UAW Local 600 is not a party.

In addition, even if she had made such inquiries with Defendant UAW, the Court agrees that UAW was not a plan administrator, plan sponsor, or plan fiduciary.  Plaintiff contends that Defendant UAW is a plan sponsor and fiduciary, as defined by 29 U.S.C. § 1002(21)(A) of ERISA.  Section 1002(21)(A) provides, in relevant part:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Plaintiff argues that Defendant UAW is a fiduciary because it negotiated the optional insurance plan with Ford. The Supreme Court has held that performance of "settlor" functions, such as plan design, establishment, termination or amendment, are not actionable through ERISA breach of fiduciary duty claims. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 889-91, 116 S. Ct. 1783, 1789-90 (1996). Therefore, the UAW did not become a fiduciary with respect to the plan when it negotiated the benefits with Ford.

Finally, Plaintiff has failed to come forth with any authority for her allegation that Defendant UAW had a duty to track and maintain information on optional benefits purchased by retirees, paid by retirees to Bankers Life.

Construing the claim in the light most favorable to Plaintiff, accepting all Plaintiff's allegations as true, as this Court must in a 12(b)(6) motion, Plaintiff has failed to state a claim upon which relief can be granted. In addition, Defendant UAW filed a motion for summary judgment. Because there is no evidence in the record to support Plaintiff's contention that Plaintiff made any inquiries to Defendant UAW, that Defendant UAW is a fiduciary, or that Defendant UAW breached any duty, Count V of Plaintiff's First Amended Complaint must be dismissed.

Accordingly,

**IT IS ORDERED** that Defendant Bankers Life's Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Ford's Motion to Dismiss or in the Alternative for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant UAW's Motion to Dismiss or for

Judgment is **GRANTED**.

                               _____

                               s/PATRICK J. DUGGAN
                               UNITED STATES DISTRICT JUDGE

Copies to:
Leslie Ann Logan, Esq.
Thomas R. Paxton, Esq.
Sherry D. O'Neal, Esq.
Lisa M. Smith, Esq.
Niraj R. Ganatra, Esq.